**Vernon E. PARKER, Jr., Petitioner,**

v.

**Joseph T. SMITH, Respondent.**

**Civil Action No. 9:10–CV–00364(DNH).**

United States District Court,
N.D. New York.

May 1, 2012.

Vernon E. Parker, Wallkill, NY, pro se.

Eric T. Schneiderman, Attorney General for the State of New York, Alyson J. Gill, Esq., Ass't Attorney General, New York, NY, for Defendant.

### MEMORANDUM—DECISION and ORDER

DAVID N. HURD, District Judge.

■ Petitioner Vernon E. Parker, Jr. filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he raises the following grounds for habeas relief: (1) the prosecutor suppressed exculpatory evidence; (2) trial counsel was ineffective; (3) the trial court erred when it failed to dismiss the jury panel after the New York Court of Appeals invalidated New York's death penalty; (4) the prosecutor committed a *Batson*[1] violation; and (5) the prosecutor engaged in misconduct because he was aware that the underlying motive for the crimes was specious, that his witnesses framed petitioner, and he knew or should have known his witnesses committed perjury. Dkt. No. 1 at 5–7. Respondent has filed a reply and the relevant state court records. *See* Dkt. Nos. 25–26. Petitioner has filed a Traverse. Dkt. No. 29.[2] For the reasons that follow, the petition will be denied and dismissed.

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

2. To the extent that petitioner's traverse could be read to raise new arguments that are not in his petition, they will not be considered because a traverse or reply is not the proper pleading in which to raise additional grounds for habeas relief. *Voymas v. Unger*, No. 10–CV–6045, 2011 WL 2670023, at *13 (W.D.N.Y. Jul. 7, 2011); *Jones v. Artus*, 615 F.Supp.2d 77, 85 (W.D.N.Y.2009).

## I. BACKGROUND

Petitioner challenges a March 31, 2005, judgment of conviction in Broome County Court of three counts of first degree murder (N.Y. PENAL LAW §§ 125.27(1)(a)(v), (1)(a)(vii) and (1)(b)), and one count of first degree burglary (N.Y. PENAL LAW § 140.30(1)). Dkt. No. 1 at 2; Dkt. No. 26, Resp'ts Mem. of Law ("R. Mem.") at 1. The proof presented at trial showed that petitioner and his codefendant, Robert Williams, unlawfully entered the home of petitioner's mother-in-law and her fourteen year old daughter shortly after 11:00 p.m. on July 20, 2002. Petitioner fatally shot both women. *People v. Parker*, 49 A.D.3d 974, 975, 854 N.Y.S.2d 233 (3d Dep't 2008). At the time of the murders, petitioner lived in Baltimore, Maryland with his wife, and the victims lived in Binghamton, New York. *Id.* Both victims were scheduled to testify against petitioner on July 30, 2002, in a criminal trial stemming from allegations that he sexually assaulted the teenaged victim. *Id.;* Tr. of Trial of Vernon Parker ("Trial Tr.") at 5366–68.

The Appellate Division, Third Department, briefly summarized the proof presented in this case:

> In addition to proof that both victims were scheduled to testify against defendant in the upcoming criminal trial, the People also presented proof that a car rented for defendant's use the night before the murders had been driven approximately 600 miles between then and the day after the murders, defendant's fingerprint was found inside this rental car, and the keys to it were found hidden under his mattress. In addition, the soles of his shoes perfectly matched footprints at the murder scene (including a piece of tape stuck to the bottom of one shoe), fibers on these shoes were consistent with carpet fibers inside the victims' home and two men generally fitting the description of defendant and Williams were seen fleeing the murder scene within minutes of a 911 call by the teenage victim reporting "a man in [her] house." Furthermore, cell phone records placed defendant and Williams traveling north from the Baltimore, Maryland, area throughout the evening of the murders (with one such record placing Williams 80 miles from Binghamton at approximately 9:00 p.m.), Williams was ultimately identified from a lineup as one of these fleeing men and the victims were killed with a 9 millimeter semiautomatic pistol that had been given to defendant by a friend the day before the murders.

*Parker*, 49 A.D.3d at 978–79, 854 N.Y.S.2d 233. The specific facts are known to the parties and will be repeated only to the extent necessary to address petitioner's claims for habeas relief.

Petitioner was sentenced to serve three concurrent terms of life in prison without parole for the murder convictions and a concurrent term of twenty-five years for the burglary conviction. Dkt. No. 1 at 2; R. Mem. at 1.[3] He appealed to the Appel-

---

3. Williams was tried separately beginning on February 2, 2005. *Williams v. Artus*, 9:09–CV0419, Dkt. No. 18, Memorandum–Decision and Order, Aug. 20, 2010, at 4, 2010 WL 3323671. He was convicted of three counts of first degree murder and one count of first degree burglary and was sentenced to serve life in prison without parole. *Id.* On November 1, 2007, the conviction was affirmed, and the New York Court of Appeals denied leave to appeal on March 6, 2008. *People v. Williams*, 45 A.D.3d 905, 844 N.Y.S.2d 477 (3d Dep't 2007), *lv. denied* 10 N.Y.3d 818, 857 N.Y.S.2d 51, 886 N.E.2d 816 (2008). Williams's petition for a writ of habeas corpus was denied on August 20, 2010. *Williams v. Artus*, 9:09–CV–0419, Dkt. Nos. 18–19. The Second Circuit dismissed his appeal in a Mandate issued on June 3, 2011. *Id.* at Dkt. No. 24.

late Division, Third Department, which affirmed his conviction. *Parker*, 49 A.D.3d at 974–79, 854 N.Y.S.2d 233. The New York Court of Appeals denied leave to appeal on May 29, 2008. *People v. Parker*, 10 N.Y.3d 868, 860 N.Y.S.2d 494, 890 N.E.2d 257 (2008).

Petitioner also filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on August 5, 2009. Dkt. No. 25–8, Ex. H. The motion was denied by the Broome County Court on December 22, 2009. Dkt. No. 25–15, Ex. O. Petitioner's application for leave to appeal the denial of his motion was denied by the Appellate Division, Third Department, on March 16, 2010. Dkt. No. 25–17, Ex. Q. Petitioner's request for re-argument was denied on May 3, 2010. Dkt. No. 25–19, Ex. S.

This action followed.

## II. *DISCUSSION*

### A. *Standard of Review*

■■■ Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398, 1400, 179 L.Ed.2d 557 (2011) (citing 28 U.S.C. §§ 2254(d)(1), (2)); *Premo v. Moore*, — U.S. —, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933,

167 L.Ed.2d 836 (2007). AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, — U.S. —, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011) (per curiam) (quoting *Renico v. Lett*, — U.S. —, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)) (internal quotation marks omitted). Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with " 'clear and convincing evidence.' " *Schriro*, 550 U.S. at 473–74, 127 S.Ct. 1933 (quoting § 2254(e)(1)). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Id.* at 473, 127 S.Ct. 1933.

### B. *Brady Violation*

■■■ Petitioner claims in Ground One of his petition that inmate Anthony Tillman told police that co-defendant Williams confessed to Tillman that petitioner was innocent. Dkt. No. 1 at 5, Ground One; Dkt. No. 6, Aff. in Support of Pet. for Writ of Habeas Corpus ("Affidavit"), at 10–11;[4] Dkt. No. 29, Traverse, at 4–9. Petitioner asserts that the prosecutor did not inform defense counsel of Tillman's statements, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Dkt. No. 6 at 10–11.

Petitioner raised this argument in his section 440 motion, claiming that Williams told Tillman that Williams committed the murders and that petitioner's wife and two others (Gregory Isaac, Jr. and Jonathan Webb) were implicated in the murders and framed petitioner. Dkt. No. 25–8, Ex. H, at 48–82. Petitioner claimed that the

4. A duplicate copy of petitioner's affidavit appears at Dkt. No. 10.

prosecutor knew of Tillman's statement because investigator Thomas Eggleston visited Tillman at the jail and obtained a detailed account of Williams's statements to Tillman, but did not disclose the information to petitioner or his counsel. *Id.* at 48, 57–58. Petitioner argued that because the prosecutor did not disclose Tillman's statements, he was deprived a fair opportunity to investigate, and that Tillman's statements "fit exactly" with the defense theory of the case—that petitioner was framed. *Id.* at 69. Petitioner also admitted, however, that he and his mother possessed a copy of Tillman's statement, and gave a copy to defense counsel, in April 2004. *Id.* at 87–91.

The state court denied petitioner's motion pursuant to CPL § 440.30(2), (4)(a), (4)(b) and (4)(d). Dkt. No. 25–15, Ex. O at 4. The court ruled that it could not consider Tillman's statement as a "sworn statement or as an affirmation" in support of petitioner's motion because Tillman's signature appeared only on the last page of the statement and, although it was notarized, there was no indication "the statement was made under oath or whether the notary only acknowledged the signature." Dkt. No. 25–15 at 2. The trial court also noted there was no language in the statement that "it was affirmed under penalty of perjury," and that it was not dated and notarized on the same date. *Id.* at 1.[5] The court then stated that if it were to consider Tillman's statement as a sworn statement or affirmation, "the result would be the same," and considered the merits of petitioner's arguments. *Id.* at 2.

■ Respondent argues that petitioner's *Brady* claim is barred by an adequate and independent state court ground because the state court relied upon CPL § 440.30(4)(b) in support of its decision denying petitioner's motion. Dkt. No. 25–15, Ex. O at 4; Dkt. No. 26, R. Mem. at 34. Section 440.30(4)(b) provides that, "[u]pon considering the merits" of a section 440 motion, the court may deny the motion without conducting a hearing if it is "based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts."

There is a split in authority as to whether a state court's denial of a motion pursuant to section 440.30(4)(b) constitutes an adequate and independent state court ground precluding federal habeas review. *See Lopez v. Ercole,* No. 09 CIV. 1398, 2010 WL 1628994, at *18–19 (S.D.N.Y. Apr. 21, 2010) (collecting cases). This court, however, has previously held that because section 440.30(4) opens with an explicit reference to "considering the merits of the motion," a denial based on section 440.30(4) is "a decision on the merits, and cannot be a procedural bar to a federal *habeas* claim." *Williams v. Duncan,* No. 03–CV–568, 2007 WL 2177075, at *13–14 (N.D.N.Y. Jul. 27, 2007) (Kahn, J.) (emphasis in original). The Second Circuit has reached a similar conclusion regarding section 440.30(4)(c). *Garcia v. Portuondo,* 104 Fed.Appx. 776, 779 (2d Cir.2004) (summary order). Accordingly, since the state court's decision constitutes a decision on the merits, petitioner's *Brady* claim is not barred by an adequate and independent state court ground, and AEDPA's deferential standard of review applies.

■ A petitioner may be entitled to habeas relief if he shows that the government violated his right to due process by failing to turn over "material exculpatory

---

**5.** Tillman's statement is dated March 1, 2004, but it was signed and notarized on April 15, 2004. Dkt. No. 25–9, Ex. I, at 1, 4.

evidence" before trial. *Strickler v. Greene,* 527 U.S. 263, 280–81, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *Giglio v. United States,* 405 U.S. 150, 153–54, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. To demonstrate a *Brady* violation, a petitioner must show that: (1) the evidence was favorable to the accused; (2) the evidence was suppressed by the prosecutor; and (3) prejudice resulted. *Strickler,* 527 U.S. at 281–82, 119 S.Ct. 1936; *see Green v. Walsh,* No. 03–CV–908, 2006 WL 2389306, at *19 (S.D.N.Y. Aug. 17, 2006) ("[A] showing of prejudice is an essential component of any 'true *Brady* violation.'"). A habeas petitioner must satisfy all three elements to prevail on a *Brady* claim. *Scheckells v. Cunningham,* No. 03–CV–1219, 2007 WL 1428472, at *6 (N.D.N.Y. May 11, 2007) (Kahn, J.) (citing *Leka v. Portuondo,* 257 F.3d 89 (2d Cir. 2001)).

In this case, as the state court found, petitioner has not demonstrated that Tillman's statement was suppressed by the prosecutor. *See* Dkt. No. 25–15, Ex. O at 2. Petitioner and his mother had copies of Tillman's statement before trial, and provided the statement to counsel well before jury selection began. Dkt. No. 25–15, Ex. O, at 2; Dkt. No. 25–8, Ex. H, at 87–91. Since petitioner and counsel had the statement well before trial, his claim that the prosecutor suppressed it fails. *See United States v. Torres,* 129 F.3d 710, 717 (2d Cir.1997) ("It is well settled that evidence 'is not considered to have been suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of [that] evidence.'") (quoting *United States v. Gonzalez,* 110 F.3d 936, 944 (2d Cir.1997)); *Palmer v. Phillips,* No. 04 CIV. 1414, 2008 WL 2596225, at *3 (S.D.N.Y. Jun. 27, 2008) (finding no *Brady*

violation where counsel knew of the evidence at issue).

Furthermore, as the state court also found, Tillman's statement does not include any information or reference that it was disclosed to police. Dkt. No. 25–15; Ex. O, at 2; Dkt. No. 25–9, Ex. I. Although petitioner claims that Tillman gave this statement, or at least the information contained in it, to Investigator Eggleston, the record refutes that claim. As the state court pointed out, Investigator Eggleston submitted a sworn statement in which he acknowledged meeting with Tillman, but in connection with an unrelated case. Dkt. No. 25–13, Ex. M.

In sum, the state court's rejection of petitioner's *Brady* claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and Ground One of the petition will be denied and dismissed.

### C. *Ineffective Assistance of Counsel*

■ Petitioner claims in Ground Two of his petition that trial counsel was ineffective for failing to (1) investigate and present an alibi defense; and (2) present exculpatory evidence in the form of Tillman's statement. Dkt. No. 1 at 5, Ground Two. Petitioner raised these arguments in his section 440 motion. Dkt. No. 25–8, Ex. H at 85–95. The state court's rejection of these claims was not contrary to or an unreasonable application of clearly established Supreme Court precedent. Dkt. No. 25–15, Ex. O at 2–4.

■ To demonstrate constitutionally ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the results of the proceedings would have been different, and as a result, petitioner suffered prejudice. *Premo,* 131 S.Ct. at 739; *Strickland*

*v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Even if a petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. *Id.* at 693–94, 104 S.Ct. 2052.

 Meeting this burden is "never an easy task ... [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo,* 131 S.Ct. at 739–40 (citations and internal quotation marks omitted). Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Harrington v. Richter,* —— U.S. ——, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011). Rather, "the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* Finally, when assessing prejudice, habeas courts "must consider the totality of the evidence before the judge or jury." *Berghuis v. Thompkins,* —— U.S. ——, 130 S.Ct. 2250, 2264, 176 L.Ed.2d 1098 (2010) (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. 2052).

 As the state court found, counsel was not ineffective for failing to call Tillman to testify, or for failing to otherwise seek admission into evidence of Tillman's statement. The decision as to "whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *United States v. Best,* 219 F.3d 192, 201 (2d Cir.2000); *see United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987); *Thompson v. Artuz,* No. 06-CV-0254, 2011 WL 736060, at *17 (W.D.N.Y. Jan. 4, 2011), *adopted by* 2011 WL 720074 (W.D.N.Y. Feb.23, 2011). "[W]hether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." *Best,* 219 F.3d at 201.

As counsel likely recognized, and as the state court concluded, Tillman's testimony would not have been admissible "[g]iven basic hearsay limitations" because it was "highly unlikely Tillman would have been permitted to testify to Williams' alleged admissions, whether as declarations against penal interest, or because there was no independent proof indicating that Williams' statements to Tillman were trustworthy and reliable. (If in fact they were made by Williams.)" Dkt. No. 25–15, Ex. O at 2.

 Under New York law, in order for Williams's statements to be admissible through Tillman as a statement against Williams's penal interest, Williams "must be unavailable, must have competent knowledge of the facts and must have known at the time the statement was made that it was against his or her penal interests." *People v. Ennis,* 11 N.Y.3d 403, 412, 872 N.Y.S.2d 364, 900 N.E.2d 915 (2008); *cert. denied,* —— U.S. ——, 129 S.Ct. 2383, 173 L.Ed.2d 1301 (2009). Even if those criteria are established, "the statement cannot be received in evidence unless it is also supported by independent proof indicating that it is trustworthy and reliable." *Id.* at 412–13, 872 N.Y.S.2d 364, 900 N.E.2d 915. Additionally, courts "admit only the portion of (the) statement which is opposed to the declarant's interest since the guarantee of reliability contained

in declarations against penal interest exists only to the extent the statement is disserving to the declarant." *People v. Brensic*, 70 N.Y.2d 9, 16, 517 N.Y.S.2d 120, 509 N.E.2d 1226 (1987).

Here, as the state court suggested, there is no independent proof indicating that the statements Williams allegedly made to Tillman were reliable or trustworthy. Dkt. No. 25–15, Ex. O at 2. Additionally, although Williams would likely have been unavailable to testify because his trial had not yet commenced at the time of petitioner's trial,[6] the portions of the statement petitioner now asserts should have been admitted—that petitioner was not involved in the murders—"is not directly inculpatory" of Williams. *See Ennis*, 11 N.Y.3d at 413, 872 N.Y.S.2d 364, 900 N.E.2d 915. Therefore, Tillman's testimony regarding what Williams allegedly told him would not qualify as a statement against Williams's penal interest, and his testimony would have constituted inadmissible hearsay. *See Slater v. Conway*, No. 11–CV–0047, 2012 WL 777481, at *11 (W.D.N.Y. Mar. 7, 2012) (rejecting claim that trial counsel was ineffective for not introducing a jailhouse statement made by petitioner's co-defendant because the statement did not qualify as a statement made against penal interest because there was no independent indicia of reliability and it was questionable whether the statement was truly inculpatory); *Culbreath v. Bennett*, No. 01–CV–6337, 2004 WL 1811394, at *13 (W.D.N.Y. Aug. 11, 2004) (explaining that portions of a codefendant's statement, that the petitioner was an innocent bystander, would have been redacted because they were not against the co-defendant's penal interest).

Counsel was not ineffective for failing to call Tillman as a witness, or for otherwise failing to attempt to admit the Tillman statement into evidence. *United States v. Arena*, 180 F.3d 380, 396 (2d Cir.1999) (finding counsel's failure to make a meritless argument does not amount to ineffective assistance); *Slater*, 2012 WL 777481 at *11.

Petitioner's claim that counsel was ineffective for failing to investigate an alibi defense, or to call potential alibi witness Nyia Hall, is also without merit. Hall was interviewed in August 2002 by an investigator from the Capitol Defenders Office. Dkt. No. 25–10, Ex. J. During the interview, Hall told the investigator that on July 20, 2002, she spoke with petitioner on the phone at approximately 9:30 a.m.; that she received a voice mail message from petitioner at approximately 4:13 p.m., returned his call on her cell phone, and invited him to her apartment; that sometime between 5:00 p.m. and 6:00 p.m., she called petitioner on his cell phone to confirm he was coming to visit; she called petitioner on his cell phone between 6:00 p.m. and 6:30 p.m., and petitioner told her he was on his way; petitioner called her at approximately 11:30 p.m. to tell her he would be late; and that petitioner arrived at her apartment sometime between 11:30 p.m. and midnight on July 20, 2002. *Id.* at 7–8, 10–11. Hall told the investigator that petitioner stayed with her until approximately 5:00 a.m. and then left her apartment. *Id.* at 12.

Hall's statement, however, contradicted petitioner's statement to police that on July 20, 2002, he was on a bounty hunting

---

6. Jury selection in petitioner's trial commenced in May 2004, and, after a three-month adjournment, jury selection was completed and the trial began in September 2004. Dkt. No. 25–35, Tr. of Trial, Sept. 14, 2004, at

4751. William s' trial began on February 2, 2005. *Williams v. Artus*, No. 9:09–CV–0419, Dkt. No. 18, Memorandum–Decision and Order, McAvoy, J., at 4.

assignment for the Four Aces Bail Bond Company; that he was picked up for the assignment by Gregory Isaac; that they did bail bond jobs in Baltimore and Frederick, Maryland; and that he returned home from the assignment between 3:00 a.m. and 4:00 a.m. on July 21, 2002. Trial Tr. at 5403–07; 5418. Additionally, petitioner's wife told police, and later testified, that petitioner arrived at their home in Baltimore at around 4:15 a.m. on July 21, 2002, and that she attempted several phone calls to petitioner on the evening of July 20, 2002, but that she received a recorded message that the subscriber was outside the coverage area. *Id.* at 5303–04.

Based upon the foregoing, the state court's decision that counsel made a strategic decision not to call Hall as a witness after weighing "the potential of the 'alibi' evidence against other evidence," including "the version [petitioner] himself gave to police as to his whereabouts," was not contrary to, or an unreasonable application of clearly established Supreme Court precedent. Dkt. No. 25–15, Ex. O at 3. *See, e.g. Richter,* 131 S.Ct. at 791 ("*Strickland* does not guarantee perfect representation, only a reasonably competent attorney.") (internal quotation marks omitted); *Osorio v. Conway,* 496 F.Supp.2d 285, 305 (S.D.N.Y.2007) (noting that trial counsel's decision not to call alibi witness was justified because counsel was concerned that a jury would not find the witness credible); *Perkins v. Comm'r of Corr. Srvcs.,* No. 04–CV–2307, 2005 WL 3591722, at *5 (E.D.N.Y. Dec. 30, 2005) ("[U]nless alibi witnesses are strong and corroborative proofs support their assertions, experienced defense counsel may eschew potentials of alibi proofs for fear that juries may assess relative credibility rather than reasonable doubt.").

Accordingly, Ground Two of the petition will denied and dismissed.

## D. *Failure to Dismiss Entire Jury Panel*

Petitioner argues in Ground Three of his petition that his Sixth Amendment right to a jury trial was violated when the trial court refused to dismiss the entire jury panel after the New York Court of Appeals declared New York's death penalty unconstitutional. Dkt. No. 1 at 6.

 The Sixth Amendment guarantees criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community. *Berghuis v. Smith,* ── U.S. ──, 130 S.Ct. 1382, 1387, 176 L.Ed.2d 249 (2010). But "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). As the Supreme Court has recognized,

> it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Id.* Jurors are presumed to be impartial, and to follow the trial court's instructions. *Penry v. Johnson,* 532 U.S. 782, 799, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); *Zafiro v. United States,* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). A trial court's finding of juror impartiality is entitled to a presumption of correctness. 28 U.S.C. § 2254; *Patton v. Yount,* 467 U.S. 1025, 1031, 1037–39, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).

 In this case, the prosecution initially sought the death penalty and jury

selection, which began in May 2004, proceeded as if this case was a capital prosecution. *Parker*, 49 A.D.3d at 975, 976–77, 854 N.Y.S.2d 233. During individual voir dire, the New York Court of Appeals declared the death penalty unconstitutional. *Id.* (citing *People v. LaValle*, 3 N.Y.3d 88, 783 N.Y.S.2d 485, 817 N.E.2d 341 (2004)). The case against petitioner was converted to a non-capital first degree murder case, and jury selection was temporarily suspended. Trial Tr. at 4046. At that point, twenty-five jurors were found qualified to serve. *Id.* at 4047–52. Defense counsel sought to dismiss the entire jury panel, which contained over 300 jurors, or, in the alternative, dismissal of the twenty-five jurors deemed eligible to serve when *LaValle* was decided. *Id.* at 4067–69, 4077–81. Counsel asserted that the random order in which the entire remaining panel was selected was violated because some panel members were excused based upon their views on the death penalty. *Id.* at 4067–69, 4077–81. Counsel further argued that the twenty-five selected jurors were tainted because their individual voir dire focused on their views on the death penalty. *Id.* at 4069–77. The trial court discharged the twenty-five jurors who were found to be qualified to serve at that point, but "it did not discharge the remaining 300 members of the jury panel who had yet to go through individual voir dire." *Parker*, 49 A.D.3d at 977, 854 N.Y.S.2d 233; Trial Tr. at 4168–70. The jury was chosen from the remaining panel members.

The Appellate Division rejected petitioner's argument on direct appeal that the entire jury pool should have been discharged. *Parker*, 49 A.D.3d at 976, 854 N.Y.S.2d 233. As the Appellate Division explained, when jury selection resumed, the trial court

> notified the jury panel of the change in the law and the concomitant change in the tenor of this case. The court specifi-

cally inquired if any prospective juror was unable to follow the law as changed or to be fair and impartial. None of the prospective jurors expressed such inability. Thereafter, at several points throughout the two-day period it took to select the jury, additional inquiries were posed to various panels concerning whether the change in the law affected any prospective juror's view of the case or ability to serve as a fair and impartial juror. Again, none of the prospective jurors expressed a changed view of the case or an inability to be fair and impartial.

*Parker*, 49 A.D.3d at 975, 976–77, 854 N.Y.S.2d 233. Those findings, which petitioner has not rebutted, are supported by the record. Trial Tr. 4268–4273; 4594–4600. The Appellate Division further found that the trial court "properly exercised its discretion in declining to dismiss the entire jury pool" because the jury voir dire record refuted petitioner's claim that "the change in law tainted the remaining members of the jury panel so as to deprive him of a fair trial and further refutes the notion that anything other than a fair and impartial jury was selected." *Id.* at 977, 854 N.Y.S.2d 233. Indeed, the remaining jury panel was qualified as to hardship when LaValle was decided, but had not been questioned individually, and their ability to be fair and impartial had not yet been explored at the time of defense counsel's motion. Trial Tr. at 4049–52, 4086, 4088–89, 4093–94, 4105–07. The Appellate Division's decision was not contrary to, or an unreasonable application of clearly established Supreme Court precedent.

Therefore, Ground Three of the petition will be denied and dismissed.

### E. *Batson Claim*

█ Petitioner claims in Ground Four of his petition that the prosecutor commit-

ted a *Batson* violation by peremptorily challenging the only African American juror on the panel. Dkt. No. 1 at 6.

During the second phase of jury selection in September 2004, the prosecutor used a peremptory strike against the only African–American juror in the pool at that point in the proceedings. Trial Tr. at 4525–26. Defense counsel objected, arguing that if the strike was permitted, the prosecutor would have eliminated the only qualified African–American juror. *Id.* at 4526–27. The trial court found that defense counsel established a prima facie case, and required the prosecutor to provide a race-neutral reason for the strike. *Id.* at 4527–28.

The prosecutor responded that during the hardship questioning the previous May, the juror appeared to take offense at his questions. Trial Tr. at 1527–28. Specifically, the prosecutor asked the juror if she could live on the $40 per day allowance paid to jurors, and the juror responded, "Heck no. Who can get by on 40 bucks a day." *Id.* at 4532. She then stopped at the jury room door, "stared" at the prosecutor, "and stayed there for a minute until the court officer said, all right, you are okay." *Id.* at 4528–29. The prosecutor also stated that the juror "glared" at him, and was "clearly irritated as if [he] was insulting her." *Id.* at 4536. Based upon the juror's demeanor, the prosecutor believed she did not like him, which could be problematic since he would be presenting much of the case. *Id.* at 4529, 4536.

The trial court noted no apparent animosity during the September 2004 proceedings, but asked defense counsel to re-

but the prosecutor's proffered explanation for the strike. Trial Tr. at 4536–37. Defense counsel stated that the prosecutor did not make note of the perceived hostility on the record when it occurred, and that defense counsel and his co-counsel did not experience the juror's reaction to the prosecutor as hostile. *Id.* at 4538. Instead, defense counsel thought the juror appeared surprised. *Id.* Counsel asked the court to be skeptical of the prosecutor's reasons because they were based on "perceptions of demeanor or tone or attitude that are not visible in the record." *Id.*

The court found that defense counsel did not meet his burden of showing that the prosecutor's reasons for the strike were a pretext, and stated, "I accept the prosecution's race neutral reason for the peremptory challenge." Trial Tr. at 4638.

On direct appeal, the Appellate Division found that petitioner "failed to make a prima facie case of purposeful discrimination by the People's use of a peremptory challenge against an African–American prospective juror," and that the burden never shifted to the prosecutor to provide a race neutral explanation for the strike. *Parker,* 49 A.D.3d at 977, 854 N.Y.S.2d 233.[7] The Appellate Division further found, however, that the record supported the trial court's finding that the prosecutor provided a race neutral explanation for the strike—"her demeanor during an exchange about stipends"—and that the finding was entitled to "great deference" on appeal. *Id.* at 977–78, 854 N.Y.S.2d 233. That decision was not contrary to, or an unreasonable application of clearly established Supreme Court precedent.

---

**7.** Since the trial court ruled on petitioner's *Batson* claim, whether he established a prima facie showing under step one of the *Batson* test is moot. *Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *see McKinney v. Artuz,* 326 F.3d 87, 98 (2d Cir.2003) ("The Supreme Court has held that the prima facie case of discriminatory intent becomes irrelevant to the analysis of a peremptory challenge once the trial court proceeds to the second and third steps as it did here.").

 There are three steps to a *Batson* inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. *Batson,* 476 U.S. at 96–97, 106 S.Ct. 1712. If so, the burden then shifts to the prosecutor to provide a race neutral explanation for striking the juror in question. *Id.* at 97–98, 106 S.Ct. 1712. The explanation does not have to be "persuasive, or even plausible" as long as it is not "inherently discriminatory." *Rice v. Collins,* 546 U.S. 333, 338, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) (quoting *Purkett v. Elem,* 514 U.S. 765, 767–768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam)). The trial court must evaluate "the persuasiveness of the justification" offered by the prosecutor to determine whether the defendant has met his burden of proving purposeful discrimination. *Batson,* 476 U.S. at 98, 106 S.Ct. 1712. But "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Rice,* 546 U.S. at 338, 126 S.Ct. 969 (quoting *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769).

 The Supreme Court has made clear that in order to grant relief under AEDPA, "a federal habeas court must find the state-court conclusion" on a *Batson* challenge was " 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Rice,* 546 U.S. at 338, 126 S.Ct. 969 (quoting 28 U.S.C. § 2254(d)(2)). In other words, a federal habeas court can grant relief only if "it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Id.* A state court's factual findings are presumed correct, and the petitioner has the burden of rebutting that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Rice,* 546 U.S. at 338–39, 126

S.Ct. 969 (citing *Miller–El v. Dretke,* 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)). Similarly, the trial court's credibility determination is entitled to "great deference," and "must be sustained unless it is clearly erroneous." *Felkner v. Jackson,* —— U.S. ——, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011) (per curiam) (quoting *Snyder v. Louisiana,* 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008)). That is so even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility." *Rice,* 546 U.S. at 341–42, 126 S.Ct. 969.

In this case, the trial court credited the prosecutor's race-neutral reason for the peremptory strike, which was based upon the prosecutor's perception of the juror's demeanor—a criteria accepted by the Second Circuit as a valid, race-neutral basis for a peremptory challenge. *See United States v. White,* 552 F.3d 240, 252 (2d Cir.2009) ("[T]he government's concern about a juror's inattentiveness or angry demeanor constitutes an acceptable reason for the exercise of a peremptory challenge."); *Green v. Travis,* 414 F.3d 288, 300 (2d Cir.2005) ("[T]he unfavorable demeanor of a venireperson has been held to be a race-neutral explanation for a peremptory challenge."); *Brown v. Kelly,* 973 F.2d 116, 121 (2d Cir.1992) (stating that "[t]o the extent that petitioner asserts the prosecutor's proffered reasons are insufficient solely because they are based on subjective evaluations of the prospective jurors' demeanor, he is mistaken;" and upholding peremptory challenges based on prosecutor's perception of one juror being timid and nervous, another juror's "flippant" answers and flirtatious manner with defense counsel, and a third juror's hostility and unresponsiveness).

Moreover, defense counsel did not dispute that the exchange described by the prosecutor took place, but stated that he

and another member of the defense team interpreted the juror's demeanor differently. Trial Tr. at 4537–39. The record therefore shows that "even defense counsel recognized an issue with [the juror's] demeanor." *Robinson v. Smith*, No. 09 CIV. 8222, 2011 WL 1849093, at *19 (S.D.N.Y. May 17, 2011) ("Tellingly, after hearing the prosecutor's reasons for striking Mallard, defense counsel did not challenge the prosecutor's assessment of Mallard's demeanor, but rather argued that he "didn't hear anything that was sufficiently race neutral." This indicates that even defense counsel recognized an issue with Mallard's demeanor.") (internal citation omitted).

In sum, nothing in the record "compels the conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications." *Rice*, 546 U.S. at 341, 126 S.Ct. 969. The state court's rejection of petitioner's claim was, therefore, not contrary to, or an unreasonable application of clearly established Supreme Court precedent.

Accordingly, Ground Four of the petition is denied and dismissed.

### F. *Prosecutorial Misconduct*

■ Petitioner claims in Ground Five of his petition that the prosecutor engaged in misconduct by improperly manipulating the evidence against him and by failing to conduct an adequate investigation before prosecuting him. Specifically, petitioner claims that the prosecutor was (1) aware that the underlying motive for the murders—the sexual abuse allegations made by the victim against petitioner—were "spurious;" (2) aware that three prosecution witnesses, Isaac, Webb and petitioner's wife, committed the murders and framed petitioner; and (3) knew or should have known these three witnesses were committing perjury. Dkt. No. 1, attached

page labeled ground five; Dkt. No. 6, Affidavit, at 2–11; Dkt. No. 29, Traverse, at 9.

Respondent argues that this ground is unexhausted and, to the extent petitioner is alleging that the entire prosecution constituted misconduct, that claim is not cognizable on habeas review. Dkt. No. 26, R. Mem. at 32, 33 n. 17.

■ An application for a writ of habeas corpus may not be granted until a prisoner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A), (B)(i), (ii). To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.

■ Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam)).

■ In this case, petitioner raised the same prosecutor misconduct claims presented in his petition in his section 440 motion in state court. Dkt. No. 25–8, Ex. H, at 73–79. The state court rejected the claims, finding that petitioner "failed to set forth facts establishing prosecutorial misconduct." Dkt. No. 25–15, Ex. O, at 4. Petitioner sought leave to appeal the denial of his section 440 motion, and raised this claim in his leave application. Dkt. No. 25–16, Ex. P, at 2, 10–13. Leave to appeal

was denied on March 16, 2010. Dkt. No. 25–17, Ex. Q. Based on the foregoing, the record shows that petitioner exhausted his prosecutorial misconduct claims. The state court's decision rejecting this claim was not, however, contrary to or an unreasonable application of clearly established Supreme Court precedent.

The Due Process Clause of the Fourteenth Amendment is violated when prosecutorial misconduct "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The use of "known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Convictions obtained by the use of evidence known by representatives of the state to be false "must fall under the Fourteenth Amendment." *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

Here, as the state court found, petitioner has failed to substantiate his prosecutorial misconduct claims. He has not shown that the prosecutor used knowingly false evidence to convict him, let alone that the use of the alleged false evidence likely would have affected the outcome of his trial. Petitioner and the prosecutor stipulated at trial that petitioner was charged with several crimes relating to the accusations of sexual abuse made by the fourteen-year-old victim, that the criminal trial was scheduled to begin on July 30, 2002, and that petitioner was aware that both victims would testify against him. Trial Tr. at 5366–68. Petitioner's arguments regarding his belief that Isaac, Webb, and his wife committed the murders and framed him were presented to the jury and were rejected. *See* Trial Tr. at 4827–30; 4871–4922; 6750–6811. Finally, much of petitioner's arguments center on the Tillman affidavit. But, as noted above, there is nothing to establish that the statements in the Tillman affidavit that are attributed to petitioner's co-defendant Williams were actually made by Williams, and there is nothing to independently corroborate those statements.

In sum, the record does not support a conclusion that the state court's rejection of petitioner's prosecutorial misconduct claim was contrary to or an unreasonable application of clearly established Supreme Court precedent.

Accordingly, Ground Five of the petition will be denied and dismissed.

Therefore, it is

ORDERED that

1. The petition for a writ of habeas corpus, Dkt. No. 1, is DENIED and DISMISSED;

2. No certificate of appealability shall issue because petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); and

3. The Clerk of the Court serve a copy of this decision and order upon the parties in accordance with the Local Rules.

IT IS SO ORDERED.