# SUPREME COURT OF THE UNITED STATES

## T. FELKNER *v.* STEVEN FRANK JACKSON

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–797.    Decided March 21, 2011

PER CURIAM.

A California jury convicted respondent Steven Frank Jackson of numerous sexual offenses stemming from his attack on a 72-year-old woman who lived in his apartment complex. Jackson raised a *Batson* claim, asserting that the prosecutor exercised peremptory challenges to exclude black prospective jurors on the basis of their race. See *Batson* v. *Kentucky*, 476 U. S. 79 (1986). Two of three black jurors had been struck; the third served on the jury. App. to Pet. for Cert. 49–50.

Jackson's counsel did not object when the prosecutor struck the first of the black jurors, Juror S. Counsel later explained that he did not make a "motion at that time" because he thought the excusal of Juror S "was a close call." After the prosecutor sought to dismiss the second juror, Juror J, Jackson's counsel made the *Batson* motion challenging both strikes. Record in No. 2:07-cv-00555-RJB (ED Cal.), Doc. 29, Lodged Doc. No. 7, pp. 76–77 (hereinafter Document 7).

The prosecutor offered a race-neutral explanation for striking each juror: Juror S had stated that from the ages of 16 to 30 years old, he was frequently stopped by California police officers because—in his view—of his race and age. As the prosecutor put it, "Whether or not he still harbors any animosity is not something I wanted to roll the dice with." *Id.*, at 78; Record in No. 2:07-cv-00555-RJB (ED Cal.), Doc. 29, Lodged Doc. No. 10, pp. 57–58, 98–100 (hereinafter Document 10).

The prosecutor stated that he struck Juror J because

she had a master's degree in social work, and had interned at the county jail, "probably in the psych unit as a sociologist of some sort." The prosecutor explained that he dismissed her "based on her educational background," stating that he does not "like to keep social workers." Document 7, at 78–79; Document 10, at 188–189; App. to Pet. for Cert. 49.

Jackson's counsel expressly disagreed only with the prosecutor's explanation for the strike of Juror J, see App. to Pet. for Cert. 22–23, 47, arguing that removing her on the basis of her educational background was "itself invidious discrimination." The prosecutor responded that he was not aware that social workers were a "protected class." As for Juror S, Jackson's counsel explained that he "let [Juror S] slide" because he anticipated the prosecutor's response and, in any event, he "only need[ed] one to establish the grounds for" a *Batson* motion. After listening to each side's arguments, the trial court denied Jackson's motion. Document 7, at 78–80.

Jackson renewed his *Batson* claim on direct appeal, arguing that a comparative juror analysis revealed that the prosecutor's explanations were pretextual. With respect to Juror S, Jackson argued that a non-black juror—Juror 8—also had negative experiences with law enforcement but remained on the jury. App. to Pet. for Cert. 47–48. Juror 8 stated during jury selection that he had been stopped while driving in Illinois several years earlier as part of what he believed to be a "scam" by Illinois police targeting drivers with California license plates. Juror 8 also complained that he had been disappointed by the failure of law enforcement officers to investigate the burglary of his car. Document 10, at 26–27, 56–57, 95–97.

With respect to Juror J, Jackson claimed that the prosecutor asked follow-up questions of several white jurors when he was concerned about their educational backgrounds, but struck Juror J without asking her any ques-

tions about her degree in social work. App. to Pet. for Cert. 49.

The California Court of Appeal upheld the trial court's denial of the *Batson* motion and affirmed Jackson's convictions. The appellate court explained that "[t]he trial court's ruling on this issue is reviewed for substantial evidence," App. to Pet. for Cert. 43 (internal quotation marks omitted), which the California courts have characterized as equivalent to the "clear error" standard employed by federal courts, see, *e.g.*, *People* v. *Alvarez*, 14 Cal. 4th 155, 196, 926 P. 2d 365, 389 (1996). With respect to whether the prosecutor's stated reasons were pretextual, the court explained that it "give[s] great deference to the trial court's ability to distinguish bona fide reasons from sham excuses." App. to Pet. for Cert. 43.

After comparing Juror S to Juror 8, the court concluded that "Juror 8's negative experience out of state and the car burglary is not comparable to [Juror S's] 14 years of perceived harassment by law enforcement based in part on race." *Id.*, at 48. As for Juror J, the court recognized that the prosecutor's dismissal was based on her social services background—"a proper race-neutral reason"—and that this explained his different treatment of jurors with "backgrounds in law, bio-chemistry or environmental engineering." The court also noted that the "prosecutor focused on [Juror J's] internship experience" at the county jail. *Id.*, at 49.

After the California Supreme Court denied Jackson's petition for review, Jackson sought federal habeas relief. The Federal District Court properly recognized that review of Jackson's claim was governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). That law provides, in pertinent part, that federal habeas relief may not be granted unless the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence pre-

sented in the State court proceeding." 28 U. S. C. §2254(d)(2). After considering the state Court of Appeal decision and reviewing the record evidence, the District Court held that the California Court of Appeal's findings were not unreasonable. App. to Pet. for Cert. 24. The District Court therefore denied Jackson's petition.

The Court of Appeals for the Ninth Circuit reversed in a three-paragraph unpublished memorandum opinion. 389 Fed. Appx. 640 (2010). In so doing, the court did not discuss any specific facts or mention the reasoning of the other three courts that had rejected Jackson's claim. Instead, after setting forth the basic background legal principles in the first two paragraphs, the Court of Appeals offered a one-sentence conclusory explanation for its decision:

> "The prosecutor's proffered race-neutral bases for peremptorily striking the two African-American jurors were not sufficient to counter the evidence of purposeful discrimination in light of the fact that two out of three prospective African-American jurors were stricken, and the record reflected different treatment of comparably situated jurors." *Id.*, at 641.

That decision is as inexplicable as it is unexplained. It is reversed.

The *Batson* issue before us turns largely on an "evaluation of credibility." 476 U. S., at 98, n. 21. The trial court's determination is entitled to "great deference," *ibid.*, and "must be sustained unless it is clearly erroneous," *Snyder* v. *Louisiana*, 552 U. S. 472, 477 (2008).

That is the standard on direct review. On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico* v. *Lett*, 559 U. S. ___, ___ (2010) (slip op., at 5) (internal quotation marks omitted). Here the trial

Per Curiam

court credited the prosecutor's race-neutral explanations, and the California Court of Appeal carefully reviewed the record at some length in upholding the trial court's findings. The state appellate court's decision was plainly not unreasonable. There was simply no basis for the Ninth Circuit to reach the opposite conclusion, particularly in such a dismissive manner.

The petition for certiorari and the motion for leave to proceed *in forma pauperis* are granted. The judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*