[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2012
JOHN LEY
CLERK

No. 10-15245
Non-Argument Calendar

_____

D.C. Docket No. 3:09-cv-00497-HLA-TEM

GARRETT SIMS,

Petitioner-Appellant,

versus

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 23, 2012)

Before HULL, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

Garrett Sims, a Florida prisoner, pro se appeals the denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. After review, we affirm.

## I. BACKGROUND

After his first trial ended in a mistrial, Sims was convicted in his second trial. To understand the issue on appeal, we review what happened at both trials.

### A.   First State Court Trial and Mistrial

In 2001, Sims was charged with two counts of driving under the influence, causing serious bodily injury, in violation of Florida Statutes § 316.193(3).[1] Sims stopped his pickup truck in the middle of the highway at night. Another vehicle then struck Sims's stopped truck, resulting in injuries to the other vehicle's occupants.

During the 2003 trial, Roy Welch, a truck driver, testified that on the night of July 27, 2001, he encountered a pickup truck stopped in the middle of the road with its lights on. As Welch maneuvered his 18-wheeler around the pickup truck, he could not see anyone inside the pickup truck or on the side of the road. Welch

---

[1]To convict a person under § 316.193(3), the state must show that, in addition to the defendant being guilty of the offense of driving under the influence by "driving or in actual physical control of a vehicle" with a blood-alcohol level of 0.08 or more, the defendant also "operate[d] a vehicle" and "by reason of such operation" caused or contributed to causing serious bodily injury to another. See Fla. Stat. § 316.193(1), (3).

2

drove to his nearby home and called 911 to advise authorities of the stopped pickup truck.

Within about fifteen minutes, Welch returned to the stopped pickup truck to place flashers around it. By that time, another vehicle already had struck the pickup truck from behind. Welch found Defendant Sims walking around the crash site and saw beer cans scattered across the road.

Ronald Allen, the driver of the other vehicle, testified that he was driving with his four-year-old son sleeping next to him. Allen looked down at his son and then up and saw the pickup truck stopped in the middle of the road, with the driver slumped over the wheel. Allen applied his brakes, but collided with the rear of the pickup truck. Allen went through the front windshield, landed in the road and broke his sternum. His son had a broken leg. A helicopter flew Allen and his son to the hospital.

Trooper Richard Gill, a Florida Highway Patrolman, responded to the crash and testified about his investigation. After smelling alcohol on Defendant Sims's breath, Trooper Gill administered field sobriety tests, which indicated that Sims was impaired. Although Trooper Gill did not personally observe Sims driving, Sims admitted he was driving the truck. Trooper Gill did not observe any visible injuries on Sims, and Sims told Trooper Gill he was not hurt. Sims also told

3

Trooper Gill he was a diabetic, but Sims did not appear to be affected by his diabetes at the time, only intoxicated. When Trooper Gill asked Sims whether he needed medical assistance, Sims initially indicated he did not need to go to the hospital. When Trooper Gill explained that Sims could either be arrested at the scene or transported to the hospital, Sims elected to go to the hospital. A later blood test indicated that Sims's blood alcohol level was .113 or .114, above the legal limit of .08.

Sims's defense was that he had not been driving the truck. Sims's defense counsel elicited testimony from several witnesses to the aftermath of the crash—including Welch, Trooper Gill, another trooper and a paramedic—that Sims was outside the truck and appeared uninjured.

The State sought to introduce Sims's hospital records indicating that Sims was injured when he struck his head on the windshield of his pickup truck. The State subpoened the hospital records to complete its file. Neither the State nor Sims's counsel saw the contents of the hospitals records until the records custodian produced them in court the day of trial. Sims's counsel objected because the government had not produced the records during discovery and had not followed Florida law in obtaining them. However, Sims's counsel added that he did "not in any way mean[ ] to suggest that the State was trying to ambush the

4

defense . . . ."

The state trial court found that allowing the records to come in "at the last minute" was "highly prejudicial."  The state trial court refused to admit the records because they "should have been disclosed" during discovery, and both parties "should have known about them way before now."  The State asked to "reserve the right to call it for rebuttal if the defendant puts on evidence that he [was] not in the vehicle."  The trial court ruled that the records could not be admitted on rebuttal.

The State then indicated that it intended to recall Trooper Gill to testify that, after the crash,  Sims said he was wearing the driver-side seatbelt and was injured in the crash.  The trial court expressed concern about the prosecutor recalling Trooper Gill to ask questions about injuries documented in the excluded hospital records.  Sims's counsel objected to Trooper Gill being recalled, stating, "[I]f they're inclined to go into that, then I would move for a mistrial.  I don't want to move for a mistrial at this point in time based on the state of the record.  However, you know, I mean it's real difficult when you get certain questions and answers out of witnesses and you proceed along and then all of a sudden there's going to be a change."

The trial court stressed that the hospital records "bring[ ] out things that are not even close to what's coming out here on the testimony."  After further

discussion, the trial court stated that it was going to declare a mistrial. The State requested permission to speak with Sims's counsel before the trial court declared a mistrial. The State's and Sims's counsel then had a brief, off-the-record discussion in the hallway. When they returned, Sims's counsel stated, "Judge, we'll abide by the Court's ruling I think is the consensus."

The state trial court then declared a mistrial and discharged the jury. The trial court agreed to defense counsel's request to place the case on a sixty-day calendar so Sims could take depositions.

## B.    Second State Court Trial

In October 2003, prior to the second trial, Sims's counsel filed a motion to dismiss on double jeopardy grounds. The motion argued that the trial court's sua sponte declaration of a mistrial barred retrial because Sims did not adopt the mistrial ruling and jeopardy attached. The State responded that trial counsel's statement that Sims would "abide" by the trial court's ruling amounted to a consent to the mistrial under Florida law, citing Adkins v. Smith, 205 So. 2d 530, 531 (1967) (finding defense counsel's statement that he had "nothing to say" on the state's proposed motion for a mistrial was consent).

The state trial court denied the motion to dismiss. The trial court stated:

I have gone over this and go back looking at the record and

6

remembering what took place. I just felt at that time that the problem with the record - - the records would have led in if I said they were coming in, then the defense would have been highly prejudiced. If I didn't let them in the state was going to be prejudiced and I felt like using the language they used here with the totality of the situation and all it was going on at that particular point in order for justice to be served that a mistrial needed to be declared and get that discovery and deal with it and then come back and try the case. So I am going to deny the motion, Mr. Taylor, and go to trial.

In the second trial, the jury found Sims guilty on both counts. Sims was sentenced to consecutive terms of 60 months' and 43 months' imprisonment.

Sims appealed the convictions, arguing that the trial court had erred in denying his motion to dismiss because Sims did not consent to the mistrial and the mistrial was not supported by manifest necessity. The First District Court of Appeal ("First DCA") summarily affirmed.

Sims then filed a pro se state petition for habeas corpus relief with the First DCA, alleging, inter alia, that his trial counsel was ineffective for consenting to the mistrial. The First DCA denied Sims's state habeas petition.

## C.    Rule 3.850 Motion for Post-conviction Relief

In April 2006, Sims filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in the Circuit Court of the Third Judicial Circuit of Florida ("3.850 court"). Relevant to this appeal, Sims argued that his trial counsel was ineffective in consenting to the trial court's sua sponte

declaration of a mistrial because there was no manifest necessity for a mistrial and counsel's consent deprived Sims of his double jeopardy rights.

The 3.850 court initially denied relief on Sims's ineffective assistance claim, but then granted Sims's motion for rehearing and scheduled an evidentiary hearing. At the hearing, Sims's 3.850 counsel stated that trial counsel was unable to attend. Instead, Sims submitted two letters by trial counsel, which were admitted in lieu of testimony.

Trial counsel's first letter, dated October 31, 2003, advised Sims, inter alia, that he might have an ineffective assistance claim that he may raise in a 3.850 motion. Trial counsel's letter stated:

> That motion would allege, if the facts bear out, that I should have specifically renewed my objection to a mistrial in the first trial. That renewal or filing of an objection should have been done once the court indicated on its own that it was going to declare a mistrial. I knew I had told the court that I did not want a mistrial, but the record reflects that it was done before the court entered its order and not after. That issue may be significant down the road, and in that regard, you would need another attorney to handle that portion of your case.

The letter also stated that trial counsel was "upset that the jury did not agree with [Sims's] version of events," and admitted that "as is always the case when there is an unsuccessful trial verdict, this lawyer rehashes and rethinks and second guesses questions that should have been asked, others that should not have been asked,

8

etc."

Trial counsel's second letter, dated September 18, 2007, was sent to the State prosecutor and enclosed the first, October 31, 2003 letter. In the second letter, trial counsel stated, <u>inter alia</u>, that the October 31, 2003 letter was an accurate statement of trial counsel's recollection of what occurred during the first trial and that trial counsel believed he had "failed" Sims by stating to the trial court that Sims "would 'abide' by the ruling re the mistrial."

**D.     Denial of 3.850 Motion**

The 3.850 court denied Sims's ineffective assistance claim. At the outset, the 3.850 court clarified that it need not determine whether Sims's counsel had consented to the mistrial because that question was already decided when Florida's First DCA on direct appeal affirmed the trial court's denial of Sims's motion to dismiss. Therefore, the only issue before the 3.850 court was whether, under <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984), trial counsel's consent constituted deficient performance that prejudiced Sims. The 3.850 court concluded that Sims had not shown deficient performance or prejudice.

As to performance, the 3.850 court found that Sims had not carried his burden to show that his trial counsel's "consent to a mistrial was deficient and not

9

the product of a sound trial strategy." The 3.850 court found that trial counsel's

letter was a second-guessing of himself through hindsight, that Sims had presented

no evidence as to whether the first trial was going favorably or unfavorably at that

point in time and that Sims had not overcome the presumption that trial counsel's

actions were reasonable, as follows:

> This letter serves only to prove that Trial Counsel has rehashed, rethought, and second guessed his decisions stemming from an unfavorable trial, which is consistent with his practice after all unsuccessful trial verdicts. As stated by the Florida Supreme Court, an attorney's second guessing himself through the beneficial lens of hindsight is of little persuasion in those proceedings. Further, this Court points out that neither party secured the attendance of Trial Counsel to testify at the evidentiary hearing. Accordingly, there was no evidence presented regarding whether the trial was progressing favorably or unfavorably, whether the State had yet proven or not yet proven the elements of the crime, or whether Trial Counsel's observations of the jury led him to believe a favorable verdict was more or less likely. Without evidence regarding the totality of the circumstances as they existed, this Court find that the Defendant has not overcome the presumption that Trial Counsel's actions were reasonable and effective.

(Citation, quotation marks and footnote omitted).

As to prejudice, the 3.850 court concluded that Sims had not shown that,

absent trial counsel's consent to the mistrial, the State was barred from retrying

him. The 3.850 court noted that the trial court's comments, both at the first trial

and at the hearing before the second trial, made clear that the trial judge

considered a mistrial manifestly necessary, whether or not Sims's counsel

consented, and that Sims had not called the trial judge to testify to the contrary. The 3.850 court emphasized that the trial court's denial of Sims's motion to dismiss on double jeopardy grounds was raised on direct appeal and affirmed. The First DCA affirmed the denial of Sims's 3.850 motion.

## E.    Section 2254 Petition

In June 2009, Sims filed his pro se § 2254 petition alleging that: (1) his second trial violated the Double Jeopardy Clause; and (2) that his trial counsel was ineffective for consenting to a mistrial at his first trial. The district court denied Sims's § 2254 petition. This Court granted a certificate of appealability ("COA") on the issue of "[w]hether Sims was denied effective assistance of counsel when his attorney failed to object after the court sua sponte declared a mistrial."

## II.  DISCUSSION

## A.    Ineffective Assistance of Counsel

To establish constitutionally ineffective assistance, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. To establish deficient performance, the petitioner must show his counsel's performance was objectively unreasonable in light of prevailing professional norms. Id. at 687-88, 104 S. Ct. at 2064-65. To satisfy Strickland's prejudice

11

prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068.

Furthermore, a federal court may not grant habeas relief on ineffective assistance claims that were previously decided in state court, unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings . . . ." Hardy v. Cross, 565 U.S. —, 132 S. Ct. 490, 491 (2011) (quoting Felkner v. Jackson, 562 U.S. —, 131 S. Ct. 1305, 1307 (2011)).[2]

Our standard of review is "doubly deferential" when "a Strickland claim [is] evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009). "The question is not whether a federal court believes the state court's determination under the Strickland standard was

---

[2]We review de novo the district court's determination whether the state court acted contrary to, or unreasonable applied, clearly established federal law or made an unreasonable determination of the facts. Reed v. Sec'y, Fla. Dep't of Corrs., 593 F.3d 1217, 1239 (11th Cir.), cert. denied, 131 S. Ct. 177 (2010).

incorrect but whether that determination was unreasonable – a substantially higher threshold." Id. (quotation marks omitted).

**B.     Sims's Claim**

Sims has not shown that the 3.850 court's denial of his ineffective assistance of trial counsel claim was contrary to, or an unreasonable application of, Strickland or based on an unreasonable determination of the facts. Sims claims that his trial counsel was ineffective for consenting, rather than objecting, to the district court's sua sponte declaration of a mistrial in the first trial. Sims's ineffective assistance claim rests on the assumption that if his trial counsel had objected to the mistrial, the state trial court necessarily would have still granted a mistrial, and Sims then would have prevailed on his subsequent motion to dismiss on double jeopardy grounds. For several reasons, we cannot say the 3.850 court unreasonably concluded that Sims had not shown deficient performance or prejudice.

First, there is no showing that if defense counsel had objected, the state trial court would have still declared a mistrial to even create a double jeopardy issue.

Second, even if the state trial court still would have declared a mistrial, the state trial court can properly do so even over a defendant's objection. In the case of a mistrial, the double jeopardy bar to a second trial can be lifted either by the

13

defendant's consent to the mistrial or by the trial court's finding, over the defendant's objection, that the mistrial is a "manifest necessity." Oregon v. Kennedy, 456 U.S. 667, 671-72, 102 S. Ct. 2083, 2087-88 (1982). When the defendant does not consent, trial judges still have broad discretion to sua sponte declare a mistrial "'whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for doing so.'" See Renico v. Lett, ___ U.S. ___, 130 S. Ct. 1855, 1863 (2010) (quoting United States v. Perez, 22 U.S. (9 Wheat.) 579, 580 (1824)). The trial court need not make an explicit finding of manifest necessity or articulate on the record the factors that led to that conclusion. Id. at 1863-64. "A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." Illinois v. Somerville, 410 U.S. 458, 464, 93 S. Ct. 1066, 1070 (1973).[3]

Third, in any event, Sims did not submit any evidence showing that no reasonable attorney in his trial counsel's shoes would have consented (or failed to

---

[3]To the extent Sims argues on appeal that the 3.850 court unreasonably applied the manifest necessity doctrine in analyzing whether the trial court's denial of his motion to dismiss violated his double jeopardy rights, this question is not within the scope of the COA. Thus, we address only trial counsel's failure to object to the district court's sua sponte declaration of a mistrial after a finding of manifest necessity.

object) to the trial court's <u>sua sponte</u> mistrial, especially given the strong evidence against Sims at that point in time. Trial counsel's correspondence says nothing about the progress of the trial at that point in time or counsel's decisionmaking or counsel's reasons for abiding by the trial court's ruling. The letters do not even admit that trial counsel consented to the mistrial or did so erroneously. Contrary to Sims's claim, the letters do not show trial counsel's ignorance of the legal standards applicable to double jeopardy and mistrials. As the 3.850 court explained, these letters amount only to trial counsel's "rehashing" with the benefit of hindsight and do not prove that trial counsel's consent (or failure to object) to the trial court's <u>sua sponte</u> declaration of a mistrial was objectively unprofessional at the point in time it occurred.

Moreover, we know from the record of the first trial that the State had already presented sufficient evidence from Allen, Welch and Trooper Gill at that point in time to convict Sims. The jury already had heard that Sims's truck was stopped in the middle of the road, that the victim saw someone slumped over the steering wheel, that Sims was present at the scene and appeared impaired, that Sims admitted he had been driving and that Sims's blood-alcohol level still was above the legal limit over four hours after the crash. The trial, if anything, was not going favorably for Sims.

Under these circumstances, Sims simply did not present any evidence to provide the kind of context that might rebut the presumption of reasonableness. As such, we cannot say the 3.850 court unreasonably concluded that Sims did not overcome the "strong presumption" that trial counsel's conduct fell within the wide range of reasonable professional assistance and, therefore, that Sims' did not carry his burden to show deficient performance.

As to prejudice, the record, if anything, shows that the trial court declared the mistrial <u>sua sponte</u> primarily based on manifest necessity due to the hospital records, and not necessarily based on Sims's consent. As the trial court explained when it denied Sims's motion to dismiss, the trial court's decision to declare a mistrial was based on the "totality of the situation" and because justice required a mistrial to allow the parties to obtain "discovery and deal with it and then come back and try the case."

For all of these reasons, the 3.850 court did not act contrary to, or unreasonably apply, <u>Strickland</u> in rejecting Sims's ineffective assistance of trial counsel claim.

**AFFIRMED.**

16