NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0737n.06

No. 11-2093

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Aug 08, 2013**
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| EDWARD GRAY, | ) |
| | ) |
| Petitioner-Appellant, | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF MICHIGAN |
| BLAINE LAFLER, Warden, | ) |
| | ) |
| Respondent-Appellee. | ) |

Before:       KEITH, CLAY, and KETHLEDGE, Circuit Judges.

**DAMON J. KEITH, Circuit Judge**.  Following affirmance of the denial of his *Batson*[1]

claim on direct review in state court, Petitioner now seeks federal habeas relief, alleging that the

prosecution unconstitutionally used peremptory challenges to exclude African Americans from the

jury in his state-court criminal trial.  Because the Michigan Court of Appeals did not unreasonably

apply federal law when it affirmed the state trial court's denial of Petitioner's *Batson* claim, we deny

Petitioner's application for habeas relief.

In 2005, a Michigan jury convicted Petitioner of first-degree criminal sexual conduct,

kidnapping, and unlawfully driving away an automobile stemming from his attack on a woman in

1997.  Medical workers collected DNA samples from the victim shortly after the 1997 attack.  (R.

8-9, at 114).  Criminal charges were brought against Petitioner after DNA evidence collected from

---

[1]*Batson v. Kentucky*, 476 U.S. 79 (1986).

him several years later identified him as the assailant in the 1997 attack via the Combined DNA Index System.

In selecting a petit jury of fourteen, a total of twenty-three prospective jurors were dismissed by the parties and the trial court. Petitioner identifies four potential jurors whom he asserts the prosecution excluded on the basis of race: James Shelton, Floyd Simpkins, Juanita Kumaraswamy, and Shantilly Derden. The following exchanges occurred during *voir dire*.

Early in *voir dire*, the court indicated privately to the attorneys that defense counsel would need to rehabilitate Juanita Kumaraswamy if she was going to be sworn into the final jury because her answers to questions indicated that her experiences would affect her judgment. (R. 8-7 at 63–64). There was no subsequent questioning of Kumaraswamy throughout *voir dire* and the prosecutor later used a peremptory challenge to excuse her. (R. 8-7, at 107).

The prosecution asked Floyd Simpkins whether he does supervisory things at his job. Simpkins replied yes. When the prosecution immediately asked Simpkins again whether he was a supervisor, Simpkins replied no.

Shantilly Derden stated that her brother had been the victim of a crime because he had been in the wrong place at the wrong time. (R. 8-7, at 85). The prosecution later used a peremptory challenge to excuse her.[2] (R. 8-7, at 131).

Exchanges between the trial judge, the trial attorneys, and James Shelton indicated that the attorneys and court all had prior knowledge of Shelton's business; however, it is unclear from the

---

[2] Shantilly Derden is mistakenly identified as Ms. Verdun in the transcript when the prosecution excused her.

record what his business is. When the trial court asked, "Do you have police come into your establishment?," Shelton responded by discussing his nickname as King James and that he catered a lot of city-related events. (R. 8-7, at 159–60). The prosecution used a peremptory challenge to excuse Shelton.

Although Defendant raised his *Batson* challenge on the first day of trial, *voir dire* lasted the entire first day and the parties agreed to conduct the *Batson* hearing the next day. At the hearing, defense counsel alleged that the prosecution unconstitutionally dismissed Juanita Kumaraswamy, Shantilly Derden,[3] James Shelton, and Floyd Simpkins on the basis of race. In response, the prosecutor offered race-neutral explanations for dismissing Shelton and Simpkins. The prosecutor stated that Simpkins did not seem to understand the questions the prosecutor asked him and that the prosecutor was concerned about how Simpkins completed the jury questionnaire. Additionally, the prosecutor stated that Shelton did not seem to understand the questions that the court asked him and that Shelton's inability to listen carefully would limit his ability to evaluate and accept DNA evidence to identify Petitioner as the perpetrator. (R. 8-8, at 4). The trial court began its ruling on the *Batson* challenge before the prosecutor could offer his reasons for excusing Derden or Kumaraswamy. In denying the *Batson* challenge, the trial court partially relied on the fact that three African-American jurors were selected to be on Petitioner's jury.

In his direct criminal appeal before the Michigan Court of Appeals, Petitioner raised a single claim: that the trial court erred by failing to apply proper *Batson* procedures to the prosecutor's

---

[3] Defense counsel mistakenly identified Shantilly Derden as "Shanita Barron" during the *Batson* hearing.

peremptory challenges.  The state appellate court found that the trial court had failed to rigorously

follow the *Batson* procedure, specifically that it had skipped the first step of the *Batson* analysis by

not ruling on whether Petitioner had established a *prima facie* case of discrimination. Ultimately, the

state appellate court held that Petitioner had failed to establish a *prima facie* case of discrimination

based on race in part because the prosecutor did not challenge three African Americans, who were

eventually sworn as jurors even though he had several peremptory challenges remaining.  Petitioner

appealed, and the Michigan Supreme Court declined to review Petitioner's case on the merits.

Petitioner filed this habeas application under 28 U.S.C. § 2254(d).  The district court ordered

an evidentiary hearing to further develop the record for Petitioner's *Batson* claim.  After the hearing,

the district court credited the prosecutor's race-neutral explanations for the four peremptory

challenges and denied the habeas application.  Petitioner timely appeals to this Court.

In federal habeas proceedings, we review a district court's legal conclusions and mixed

questions of fact and law *de novo*.  *Moore v. Mitchell*, 708 F.3d 760, 774 (6th Cir. 2013).  Federal

habeas courts review the last state-court decision to reach the merits of the claims being considered.

*Moreland v. Bradshaw*, 699 F.3d 908, 931–32 (6th Cir. 2012).

On appeal, Petitioner relies on *Hernandez v. New York*, 500 U.S. 352, 359 (1991), to argue

that the Michigan Court of Appeals unreasonably applied federal law when it held that he had failed

to establish a *prima facie* case of discrimination based on race.  While the Michigan Court of

Appeals applied federal law incorrectly under *Hernandez* as to Shelton and Simpkins, it did not

apply federal law unreasonably as to any of the four peremptory challenges. Consequently, we affirm.[4]

Any party's use of peremptory challenges to exclude jurors on the basis of race from serving on a jury violates the Equal Protection Clause. *Batson*, 476 U.S. at 89. "In order to establish an equal protection violation under *Batson*, the complaining party must first make a *prima facie* showing that the peremptory challenge was based on race." *United States v. Cecil*, 615 F.3d 678, 686 (6th Cir. 2010) (internal citation omitted). To establish a *prima facie* case, the opponent of the strike must show that "the relevant circumstances raise an inference that the proponent of the strike excluded prospective jurors from the petit jury because of their race." *United States v. Watford*, 468 F.3d 891, 911–12 (6th Cir. 2006). If the complaining party makes out a *prima facie* case, in order to overcome the *Batson* claim "the proponent of the strike . . . must proffer a facially valid, race-neutral explanation for the challenge." *United States v. Kimbrel*, 532 F.3d 461, 466 (6th Cir. 2008). The reason for a strike need not be persuasive, nor even plausible. *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995). At step three, the trial court must assess "whether the opponent of the strike has proved purposeful discrimination." *United States v. Mahan*, 190 F.3d 416, 424 (6th Cir. 1999). "To do so, the [trial] court must 'assess the proponent's credibility under all of the pertinent

---

[4] Petitioner also argues that the district court erred when it held an evidentiary hearing to develop a record about the prosecutor's reasons for striking the four relevant potential jurors. Federal habeas review of claims that have been adjudicated on the merits in state court proceedings is limited to the record that was before the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Consequently, our affirmance relies on only the state court record and does not rely on the record generated by the district court's evidentiary hearing. *City Mgmt. Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 251 (6th Cir. 1994) (holding that the Court of Appeals may affirm on any ground supported by the record).

circumstances, and then weigh the asserted justification against the strength of the opponent's prima facie case under the totality of the circumstances." *Kimbrel*, 532 F.3d at 466 (internal citations, quotations, and punctuation omitted). "Throughout the *Batson* inquiry, the ultimate burden of persuasion always rests with the party challenging the strike." *United States v. Jackson*, 347 F.3d 598, 604 (6th Cir. 2003). *Batson* rulings turn largely on credibility. *See T. Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011). A trial court's determination in a *Batson* hearing is afforded great deference and "must be sustained unless it is clearly erroneous." *Id.* (internal citations and quotation omitted).

The previous paragraph outlines the *Batson* standard on direct review. The Antiterrorism and Effective Death Penalty Act (AEDPA) "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA requires that a petitioner show that he is in custody due to a state court "decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254. That application must be objectively unreasonable. *Cavazos v. Smith*, 132 S. Ct. 2, 3 (2011). Further, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law," and we may not grant habeas relief merely because we conclude that the state court decision applied federal law incorrectly. *Williams v. Taylor*, 529 U.S. 362, 410—11 (2000) (emphasis in original).

*Shelton and Simpkins*

The Michigan Court of Appeals applied federal law incorrectly, but not unreasonably, when it found that Petitioner had not established a *prima facie* showing of discrimination under *Batson* as to James Shelton and Floyd Simpkins because the prosecutor had offered race-neutral reasons for

excusing them. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359. On day two of trial, the state trial court ruled on the ultimate issue that there was no discrimination as to any of the four peremptory challenges to which Petitioner objected after the prosecutor had offered race-neutral reasons for only two of the four relevant peremptory challenges. The prosecutor offered race-neutral explanations for exercising peremptory challenges as to Shelton and Simpkins.

The prosecutor cited Shelton's and Simpkins's illogical responses to straightforward questions as the reason he exercised peremptory challenges to excuse them. Here, it was not unreasonable for the trial court to credit the prosecutor's reason in a case that turned on the identification of the perpetrator on the basis of DNA evidence seven years after the crime had been committed. Petitioner did not offer any argument during trial to dispute the prosecutor's proffered reasons. Although the Michigan Court of Appeals affirmed the trial court's *Batson* decision as to Shelton and Simpkins for an incorrect reason, we defer to its holding because it did not involve an objectively unreasonable application of federal law.

*Kumaraswamy and Derden*

Petitioner argues that the Michigan Court of Appeals's holding that he failed to establish a *prima facie* showing of discrimination as to Juanita Kumaraswamy and Shantilly Derden was an unreasonable application of federal law. Petitioner argues that whether he established a *prima facie* showing at step one was moot in the context of his direct appeal under the precedent of *Hernandez*

because the trial court had already ruled on the ultimate issue at step three—that there was no discrimination. However, *Hernandez* requires both that the trial court ruled on the ultimate issue of discrimination *and* that a prosecutor offered a race-neutral explanation for the peremptory challenge to moot the issue of a *prima facie* showing. *Id.* at 359. The prosecutor offered no race-neutral reasons for challenging Kumaraswamy and Derden. Therefore, *Hernandez* does not preclude the Michigan Court of Appeals's holding that Petitioner failed to establish a *prima facie* case of discrimination as to Kumaraswamy and Derden.

Petitioner fails to point to any facts beyond the race of the potential jurors that would give rise to an inference of discrimination. Given that three African Americans were eventually empaneled on the jury, it was not an unreasonable application of federal law for the Michigan Court of Appeals to hold that the relevant circumstances did not give rise to an inference of discrimination sufficient to establish a *prima facie* case.

For the foregoing reasons, we **DENY** the petition for a writ of habeas corpus.