NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  14a0439n.06

Case No. 11-2647

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 17, 2014
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| BRIAN LOTT, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| DUNCAN MACLAREN, Warden, | ) DISTRICT OF MICHIGAN |
| | ) |
| Respondent-Appellee. | ) |
| _____ | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

BEFORE: BATCHELDER, Chief Judge; SILER and CLAY, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge.  In 2005, a Michigan jury convicted Brian Lott of two cocaine-related offenses and sentenced him to serve concurrent terms of 179 months to 30 years in prison.  Lott sought, but ultimately failed to obtain, state post-conviction relief, and Michigan state courts upheld the conviction and sentence on appeal.  Lott then petitioned for federal habeas relief pursuant to 28 U.S.C. § 2254.  The district court denied Lott's petition, and Lott now appeals that denial to this court.  For the reasons that follow, we AFFIRM the district court's denial of Lott's habeas petition.

I.

The Michigan Court of Appeals accurately summarized the facts of this case:

On February 11, 2004, in response to information regarding potential narcotics trafficking, Deputy Kenneth Rumps of the Macomb County Sheriff's

Department began surveillance of a 2003 Chevy Blazer located in the parking lot of the Extended Stay Hotel in Roseville, Michigan. About 9:00 p.m., Rumps observed Ronnie Kevin Turrentine leave the hotel, enter the Blazer, and drive away. After calling for backup, Rumps followed the Blazer and observed Turrentine make a series of traffic infractions. Because Rumps was in an unmarked car, he notified an officer in a marked car to pull over the Blazer for a traffic stop.

Rumps and other officers arriving on the scene conducted a normal traffic stop. After learning that Turrentine was from another state and driving a rental car and receiving evasive answers from Turrentine regarding his reasons for visiting Detroit, the officers grew suspicious. Two officers had police dogs with them, and they had the dogs conduct exterior sniffs of the Blazer to locate narcotics. Both dogs indicated that they smelled narcotics near the rear driver's side tire and wheel well of the Blazer and under the vehicle's carpeted trunk. When searching the vehicle, the officers noticed that the bolts used to hold the gas tank to the undercarriage of the Blazer looked unusually clean and were covered in fresh grease. The officers also noticed scuff marks near the gas tank. An officer in possession of a fiber-optic scope threaded the scope through the opening of the gas tank and noticed white packages with black zip ties inside the tank. The officers immediately drove the Blazer to the Oakland County Sheriff's Department Central Garage, where garage mechanics removed the gas tank and found 22 heat-sealed bricks of cocaine inside.

The officers also confiscated a key to Room 328 of the Extended Stay Hotel from Turrentine. Room 328 was registered to Turrentine on the night in question. Rumps immediately contacted other officers to begin surveillance of Room 328 and returned to the hotel. Eventually, defendant and Kareem Dale Rhodes attempted to enter Room 328. The officers detained them and escorted them to the room across the hall, where they confiscated a key to Room 328 of the Extended Stay Hotel found in their possession.

When defendant admitted that he had driven to the hotel, the officers asked to search his vehicle. Defendant said that he was driving a Ford Taurus and permitted the officers to take his car keys. The officers located the vehicle in the parking lot, and a police dog performing an exterior sniff of the car identified the scent of narcotics at the back of the trunk and on the driver's side door handle. The officers, including Rumps, opened the trunk and found a toolbox with miscellaneous tools, a red bucket, nylon pants, and a nylon jacket inside. The red bucket contained a box of natural latex disposable gloves, a pair of size 12 Neoprene shoes, a hat, a sponge, and more nylon clothing. Among the tools in the box was a 15–millimeter socket with grease in it and a 15–millimeter wrench. The trunk also contained two heat sealers of different sizes, rolls of FoodSaver plastic in a plastic bag, rubber bands, a box cutter razor knife, and a black handheld bag with a red zip tie containing three plastic rolls and an extension cord.

After searching the Taurus, the officers transported defendant and Rhodes to the Macomb County Jail, where Detective Sergeant Terrance Mekoski of the Oakland County Sheriff's Department questioned them. Defendant told Mekoski

2

that he was from California and had arrived in Michigan the previous day to meet a female. When Mekoski asked for the female's name, defendant paused and then replied "Veronica." Defendant claimed that he arrived at Detroit Metro Airport the day before, rented the Taurus, and drove to Veronica's apartment on the east side of Detroit. Defendant claimed that he spent the night with her, but his interaction with Veronica "wasn't what he thought it was going to be" and he left the following day. Defendant claimed that he could not provide her last name, an address or the specific location of the apartment, or a telephone number.

Defendant claimed that Turrentine also happened to be visiting Detroit at this time. Defendant and Turrentine knew each other, and defendant claimed that he left Veronica's apartment on the morning of February 11, 2004, to meet Turrentine and stay in his hotel room at the Extended Stay Hotel. After meeting with Turrentine that morning, defendant "drove around the whole day going to various malls . . . ." Eventually, defendant went to Eastland Mall, where he had a chance encounter with Rhodes, another acquaintance. Defendant and Rhodes left the mall together in defendant's rented Taurus and spent the rest of the day traveling from mall to mall and "hooking up with girls."

Mekoski also interviewed Rhodes in the Macomb County Jail's interview room that evening. Rhodes waived his Miranda rights and spoke with Mekoski. Rhodes claimed that he had flown to Detroit from California approximately one week before his arrest. He claimed that he had been staying at the Quality Inn near the Detroit Metro Airport, but recently switched lodgings and was staying at the Extended Stay Hotel. Rhodes confirmed that he and defendant had been "hanging out" and "hooking up with girls" when visiting the Detroit area, but he did not provide names, addresses, or telephone numbers of these females.

Mekoski then described to Rhodes what the officers had found in Turrentine's Blazer and defendant's Taurus. When he asked Rhodes where the narcotics would be delivered, Rhodes admitted that the narcotics were scheduled for delivery at a house on the east side of Detroit. Rhodes also admitted that the police found the narcotics just before their scheduled delivery.

Defendant, Rhodes, and Turrentine were each charged with one count of possession with intent to deliver 1,000 or more grams of a mixture containing cocaine, MCL 333.7401(2)(a)(*i*), and one count of conspiracy to possess with intent to deliver 1,000 or more grams of a mixture containing cocaine, MCL 750.157a, and were bound over for trial on these charges. Defendants did not ask for separate trials or separate juries. After deliberation, the jury found all defendants guilty of all charges.

*People v. Lott*, No. 265051, 2007 WL 1159980, at *1–2 (Mich. Ct. App. Apr. 19, 2007)

(citations omitted).

The trial court sentenced Lott to concurrent sentences of 179 months to 30 years for the convictions. Lott moved for a new trial, arguing that his trial counsel rendered

ineffective assistance and that the evidence on which he was convicted was insufficient as a matter of law. The trial court held an evidentiary hearing, known as a *Ginther* hearing,[1] on the issue of ineffective assistance of counsel, and then issued an opinion and order denying Lott's motion.

Lott appealed the trial court's decision to the Michigan Court of Appeals, and the court affirmed Lott's convictions and sentence in an unpublished opinion. *See Lott*, 2007 WL 1159980, at *1. Lott then filed for leave to appeal that decision in the Michigan Supreme Court. The Michigan Supreme Court denied the application on October 17, 2007, "because we are not persuaded that the questions presented should be reviewed by this Court." *People v. Lott*, 739 N.W.2d 621, 621 (Mich. 2007).

Lott commenced this action in October 2008 pursuant to 28 U.S.C. § 2254 by filing a petition for a writ of habeas corpus. After the district court denied Lott's petition, it granted a Certificate of Appealability ("COA") on his ineffective assistance of counsel claims and denied a COA on his remaining claims. We denied Lott's request to expand the COA. We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 2253(a).

## II.

We review *de novo* a district court's conclusions on legal issues and mixed questions of law and fact, and review its factual findings for clear error. *Hodges v. Colson*, 727 F.3d 517, 525 (6th Cir. 2013). "A habeas petitioner's ineffective assistance of counsel claim is a mixed question of law and fact, for which district-court determinations are subject to *de novo* review." *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court shall not grant a habeas petition with respect to any claim that was adjudicated on the merits in state court unless the adjudication "resulted in a

---

[1] *See People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

4

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under the "unreasonable application" clause in § 2254(d)(1), we may grant the writ "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the petitioner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

AEDPA does not permit *de novo* review of a state court's adjudication of a federal claim. *See Hinkle v. Randle*, 271 F.3d 239, 246 (6th Cir. 2001). Rather, we review a state court's determination for objective unreasonableness. *See Williams*, 529 U.S. at 409–10; *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination . . . was incorrect but whether that determination was unreasonable—a substantially higher threshold." (internal quotation marks omitted)). When reviewing a habeas petition under § 2254, we look to the last reasoned state court decision adjudicating the federal claims, which in this case is the Michigan Court of Appeals' decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991).

Lott contends that the Michigan Court of Appeals erred by rejecting his claims for ineffective assistance of counsel. The Supreme Court outlined the test for a claim of ineffective assistance of counsel in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

466 U.S. 668, 687 (1984). The legal standard articulated in *Strickland* is "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). In order to prove deficient performance, a

defendant must identify acts that were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Counsel's representation is deficient if it falls "below an objective standard of reasonableness." *Id.* at 688. Our review of counsel's performance is highly deferential. *Id.* at 689. To satisfy the prejudice prong, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Supreme Court recently stressed that the "standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal quotation marks and citations omitted). Because of this doubly deferential standard, the Supreme Court cautioned that

> [f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*

Lott raises five ineffective assistance of counsel claims on appeal: trial counsel's (1) failure to file a motion for severance; (2) failure to file a motion to suppress certain evidence; (3) failure to investigate certain circumstances surrounding the events at issue in Lott's case; (4) failure to challenge certain evidence introduced at trial; and (5) improper closing argument and failure to make an opening argument. After a careful review of the record, we agree with the district court and find that the Michigan Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law.

## A. Severance

Lott alleges that his counsel provided ineffective assistance by failing to file a pre-trial motion for severance. Under Michigan law, "[s]everance is mandated only when a defendant demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v. McCray*, 533 N.W.2d 359, 361 (Mich. Ct. App. 1995). According to Lott, counsel's failure to move for severance was deficient performance under *Strickland* because no substantive evidence implicated him in the crimes of his co-defendants, but a jury would have associated Lott with the substantive evidence presented against his co-defendants at their joint trial.

In Lott's state post-conviction proceedings, the Michigan Court of Appeals affirmed the trial court's decision rejecting this claim. *See Lott*, 2007 WL 1159980, at *9–10. At an evidentiary hearing conducted by the trial court, Lott's counsel testified that he did not move for severance because he wanted to demonstrate that Lott was merely present during, and not involved with, any criminal activity. He hoped the jury would find Lott less culpable than his co-defendants. The Michigan Court of Appeals held that counsel's decision did not constitute deficient performance because "decisions concerning which motions to file are matters of trial strategy, within the sound professional judgment of the trial counsel," and Lott had not explained why his counsel's actions did not constitute sound trial strategy. *Id.* at *10.

Based on our review of the record, we conclude that the Michigan Court of Appeals' determination that defense counsel's decision not to move for severance reflected a strategic judgment and therefore counsel's representation was not ineffective was neither contrary to nor an unreasonable application of clearly established federal law under the doubly deferential standards of § 2254(d) and *Strickland*. This is a "reasonable argument that counsel satisfied

7

*Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788. While Lott provides several reasons allegedly undercutting counsel's rationale for not filing a motion to sever, counsel's strategy "need not be particularly intelligent or even one most lawyers would adopt." *Cone v. Bell*, 243 F.3d 961, 978 (6th Cir. 2001), *rev'd on other grounds*, 535 U.S. 685 (2002). "Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000). The state court did not unreasonably apply *Strickland* to Lott's claim.

### B. Motion to Suppress

Lott contends that his counsel rendered ineffective assistance by not moving to suppress evidence obtained from Lott's vehicle. After Lott gave police officers his car keys, they searched his car and found drug paraphernalia. *Lott*, 2007 WL 1159980, at *1–2. Lott maintains that he never consented to the search, that his counsel knew this, and, thus, that not filing a motion to suppress constituted ineffective assistance of counsel under *Strickland*.

Our review of the record satisfies us that the Michigan Court of Appeals applied *Strickland* reasonably in rejecting Lott's claim. The court determined that trial counsel did not file a motion to suppress because, as counsel asserted at the *Ginther* hearing, Lott told him that he had consented to the search. *See Lott*, 2007 WL 1159980, at *10–11. This is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788. The trial court found counsel's testimony credible over Lott's conflicting testimony. The Michigan Court of Appeals deferred to the trial court's credibility determination, *see Lott*, 2007 WL 1159980, at *10, a reasonable decision in light of the deference appellate courts owe to trial judges on witness credibility issues. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011). Moreover, for purposes of our review, the trial court's factual determination is entitled to the

presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). Lott has not demonstrated through clear and convincing evidence that the trial court erred. *See* 28 U.S.C. § 2254(e)(1).

The Michigan Court of Appeals also acknowledged that the Michigan Rules of Professional Conduct prohibit a lawyer from knowingly making a false statement of material fact to the court and from offering evidence known to be false. Mich. R. Prof'l Conduct 3.3(a). An attorney's refusal to violate codes of professional ethics cannot constitute ineffective assistance of counsel. *See Nix v. Whiteside*, 475 U.S. 157, 174–75 (1986). The Michigan Court of Appeals' holding that counsel was not ineffective because he could not ethically move to suppress the evidence is objectively reasonable and is not contrary to or an unreasonable application of clearly established federal law.

### C. Failure to Investigate

Lott alleges that his trial counsel rendered ineffective assistance because he failed to investigate potential witnesses and evidence before trial. Lott wanted counsel to contact the manager of the hotel where he was arrested, and Veronica, a female acquaintance he claimed he had come to Detroit to meet, and whose last name, location, address, and phone number Lott was unable to provide to police or trial counsel. The Michigan Court of Appeals concluded that Lott's argument was meritless because he never explained how either witness would testify or aid his defense. *See Lott*, 2007 WL 1159980, at *12–13. After reviewing the court's decision, we conclude that the court applied federal law reasonably. We have held that "a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002).

As the Michigan Court of Appeals pointed out, Lott failed to explain how the hotel manager's or Veronica's evidence would materially aid his defense. The Michigan Court of Appeals' rationale for rejecting Lott's claim was objectively reasonable.

Lott next argues that his counsel was ineffective because he did not investigate evidence that the plastic used to wrap the cocaine found in Turrentine's car was different from the plastic found in Lott's vehicle. Lott waived this issue because he failed to develop it in his brief. *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005). Even if Lott did not waive the issue, the Michigan Court of Appeals' decision was not contrary to or an unreasonable application of federal law because the court provided a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788. Trial counsel explained at the *Ginther* hearing that he did not make use of this evidence because the prosecution never argued that the plastic taken from Lott's car was the same plastic used to wrap the cocaine found in Turrentine's car. *Lott*, 2007 WL 1159980, at *13. The Michigan Court of Appeals found trial counsel's explanation persuasive and noted that Lott never explained how counsel's decision did not constitute sound trial strategy. *Id.* The court did not unreasonably apply *Strickland* to this issue.

### D. Failure to Challenge Evidence Introduced at Trial

Lott complains that trial counsel was ineffective for failing to object to testimony from Detective Mekoski, one of the police officers involved in the case. Describing his conversation with Lott's co-defendant Rhodes, Mekoski testified: "I stated when were the narcotics to be picked up? He [Rhodes] said they were supposed to be delivered later on that day. That we had got them just before, just prior to making the delivery." The parties had agreed that all references to "we" in Mekoski's testimony about Rhodes' statement would be replaced with "I"

based on potential Confrontation Clause issues under *Bruton v. United States*, 391 U.S. 123 (1968). Lott claims that Mekoski's remark was important because it implicated Lott, and that allowing the jury to hear that Rhodes and Lott had picked up the drugs shortly before the arrests hurt Lott's case.

The Michigan Court of Appeals rejected Lott's argument because he failed to establish that Mekoski's testimony prejudiced him, *see Lott*, 2007 WL 1159980, at *14, and we are satisfied that the court did not unreasonably apply *Strickland* in reaching this conclusion. Because there was strong evidence implicating Lott in the crime, the court's conclusion that there was not "a reasonable probability" that the result of the proceeding would have been different had counsel objected is reasonable. *Strickland*, 466 U.S. at 694; *see also Hodge v. Hurley*, 426 F.3d 368, 377 (6th Cir. 2005). Moreover, Mekoski's statement arguably did not prejudice Lott because it was ambiguous. Looking at the entire context of the statement, we agree with the district court that the "we" in his statement could have referred to the police. The Michigan Court of Appeals' decision was not contrary to or an unreasonable application of federal law.

### E. Opening and Closing Arguments

Lott's final argument is that his counsel rendered ineffective assistance by failing to make an opening argument and by making a closing argument that was detrimental to his defense. Regarding counsel's failure to make an opening argument, the Michigan Court of Appeals found that "[t]he decision whether to make an opening statement is a matter of trial tactics." *Lott*, 2007 WL 1159980, at *14. The court pointed out that, during the *Ginther* hearing, counsel "provided several strategic reasons for choosing not to give an opening statement." *Id.* After reviewing trial counsel's statements at the *Ginther* hearing, we conclude that the court

reasonably applied *Strickland* to this issue. Trial counsel testified that he did not make an opening statement because he believed that if he had, the prosecutor would have emphasized Lott's role in the crimes to the jury. Counsel also agreed with co-defendants' attorneys to waive opening since he was not going to call any witnesses. "An attorney's decision not to make an opening statement is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel." *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004) (internal quotation marks omitted). Lott points to no Supreme Court precedent to the contrary. Thus, the Michigan Court of Appeals' decision was not contrary to or an unreasonable application of federal law.

Lott also contends that counsel rendered ineffective assistance by making several improper statements in his closing argument. Counsel argued at closing that the jury should acquit because Rhodes did not mention Lott's name in his statement to police. The trial judge admonished counsel out of the presence of the jury for making this argument because Rhodes' statement was redacted to eliminate Lott's name.

Rejecting Lott's claim, the Michigan Court of Appeals reasoned that counsel's remark did not prejudice Lott because counsel was reprimanded outside the presence of the jury and the jury received no indication that counsel's argument was improper. *Lott*, 2007 WL 1159980, at *15. The court found that the "uncorrected argument instilled in the jurors the belief" that Lott was not involved in the conspiracy. *Id.* at *15 n.18. After reviewing the record, we find that the state court did not unreasonably apply *Strickland* to this issue. The court reasonably found that Lott could not show prejudice because the jury did not know that counsel's statement was improper, and the statement may have actually benefitted Lott.

Finally, Lott argues that his counsel provided ineffective assistance by mentioning at closing that hotel keys were not included in the record, when in fact they were included in the record. As the Michigan Court of Appeals noted, however, Lott could not show prejudice because "[counsel's] brief argument, presented without comment or objection from the trial court or prosecutor, would not automatically cause the jury to question the credibility of his presentation of the facts and theory of the case." *Lott*, 2007 WL 1159980, at *15. This is an objectively reasonable argument given the large quantity of evidence adduced against Lott at trial. *See Strickland*, 466 U.S. at 694; *see also Hodge*, 426 F.3d at 389. Lott's argument on this claim fails.

### III.

For the foregoing reasons, we AFFIRM the district court's denial of Lott's habeas petition.